J-A13013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.G.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.E.A., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1345 WDA 2024 |

Appeal from the Order Entered October 8, 2024
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2024-AD-23

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.: FILED: May 30, 2025

M.E.A. ("Father") appeals from the order granting the petition filed by C.B. ("Mother"), which involuntarily terminated Father's parental rights to his daughter, R.G.A., born in December 2017. We affirm.

We glean the factual and procedural history of this matter from the certified record. Previously, Mother and Father shared physical custody of R.G.A., and in accordance with their arrangement, Father was allotted four to five hours a day, two days per week, with no overnights. Custody exchanges were arranged through text messages. Father typically did not keep R.G.A. for his complete allocated time, and he has not paid child support for multiple years. On average, he saw R.G.A. twice a month.

On August 27, 2023, when Mother arrived to pick R.G.A. up from Father's custodial visit, Father informed Mother that he was leaving the

country for an undisclosed purpose. Unbeknownst to her, Father was granted top secret status for employment as a civilian for the Department of Defense overseas. This is the last date that Father saw Mother and R.G.A. in person.

Mother filed the instant petition on June 18, 2024, seeking to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). The orphan's court held a termination hearing on October 4, 2024, at which time R.G.A. was six years old. Therein, the court heard testimony from Mother, Father, and paternal grandfather. However, while abroad, Father sustained an injury from a drone strike that cut short his employment and affected his memory and ability to recall dates. Thus, Father struggled to proffer an accurate account of the time he spent overseas. The following facts are gathered from his vague recollections.

Before he departed, Father underwent training for several weeks in the states. His overseas employment began sometime in October 2023, and while there, his communication was restricted. He also obtained a second, covert cell phone that prevented his telephone number from appearing on the recipient's phone. Father returned to Pennsylvania in the summer of 2024, but asserted that he was home before Mother filed the instant petition. On September 1st, 4th, and 6th of 2023 or 2024, Father attempted to call Mother using the covert phone. Mother was aware that Father frequently prevented his number from being displayed, but she refused to answer unidentified calls, and her phone was not able to receive voicemails.

Father's parents also did not know where he was located overseas, and their communication with him was limited. Once in November 2023, Father interacted with R.G.A. on a shared video call along with his parents, sister, and niece. Father's parents otherwise saw R.G.A. without Father present five times between August 2023 and June 2024, but they expressed to Mother that they did not want to be involved in Father and Mother's custody affairs. Father's parents provided R.G.A. with presents that were paid for by Father, but they did not indicate as such and told R.G.A. they were from the family. Father's parents could not recall when Father returned to the country.

Once back in the states, Father claimed to have attempted to enforce his and Mother's custody order before Mother filed the petition, but he averred that his efforts were thwarted by absent courthouse staff and unreturned phone calls to the custody office. Father also stated that he could not afford an attorney at the time because he had previously filed a protection from abuse order on Mother's former partner in 2021. Father began to take classes at Penn State Altoona in their veteran's rehabilitation program in the fall of 2024. He also had multiple photographs of him and R.G.A., but they were one to three years old. *See* Father's Exhibit 2.

Mother, a certified surgical technologist, has lived with her paramour, D.D., a corrections officer, for over three years. D.D. wishes to adopt R.G.A., as he has fulfilled a parental role for her during this time. R.G.A does not talk about Father, and Father has never taken R.G.A. to doctor's appointments,

daycare, school, dance lessons, or gymnastics. Mother was unaware of when Father returned to the country. He had not called or text messaged Mother through his known number, nor sent letters, cards, or emails, since August 27, 2023.

Although R.G.A. was not in attendance and did not testify at the termination hearing, her court-appointed counsel, Maryann Joyce Bistline, Esquire, reported to the orphans' court that she interviewed the child for forty minutes.[1] She attested that R.G.A. was "very clear on who she looks to as her father," meaning D.D. *See* N.T. Hearing, 10/4/24, at 1-2.

The court took the matter under advisement, and on October 8, 2024, filed an order involuntarily terminating Father's parental rights pursuant to § 2511(a)(1) and (b), and an opinion containing a summary of the court's rationale.[2] Importantly, the court did not credit Father's testimony that he attempted to enforce the custody order once he returned to the country, finding that his statements regarding the custody office and his financial problems were incredible. *See* Orphans' Court Opinion, 10/8/24, at 4-5. In filing his appeal, Father did not include his concise statement as required by

---

[1] Attorney Bistline served as guardian *ad litem* and court-appointed counsel for R.G.A. in conformity with 23 Pa.C.S. § 2313(a). The orphans' court found that Attorney Bistline's dual representation did not create a conflict between the child's legal interest and best interests.

[2] The court declined to analyze § 2511(a)(2) where it concluded that Mother met her burden as to § 2511(a)(1).

Pa.R.A.P. 1925(a)(2)(i) and (b). Upon this Court's order to do so, however, Father timely complied. Thereafter, the orphans' court filed a supplemental opinion in compliance with Rule 1925(a)(2)(ii).

Father raises the following issues for our consideration:

I.   Whether the trial court erred and/or abused its discretion when ordering the parental rights of [Father] to be terminated[.]

II.   Whether the trial court erred and/or abused its discretion when insufficient evidence existed to terminate the parental rights of [Father].

Appellant's brief at 6 (pagination provided).

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such,

- 5 -

the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Int. of Z.N.B.*, 327 A.3d 241, 247-48 (Pa.Super. 2024) (cleaned up).

Section 2511 of the Adoption Act governs the termination of parental rights, which requires a bifurcated analysis focusing first on one of the eleven potential grounds that may warrant termination. **See** 23 Pa.C.S. § 2511(a). If the orphans' court concludes that the petitioner has established one of these subsections by clear and convincing evidence, the court then proceeds to the second segment of the analysis, § 2511(b), which concentrates on the child's developmental, physical, and emotional needs and welfare.[3] *Int. of Z.N.B.*, 327 A.3d at 248.

Our analysis will focus upon § 2511(a)(1), which provides as follows:

**(a) General Rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental,

---

[3] Father does not present a challenge with respect to § 2511(b). As a result, we only address § 2511(b) to the extent that it affects our § 2511(a)(1) discussion.

physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

In order to establish sufficient grounds for termination according to § 2511(a)(1), the petitioner must demonstrate by "competent, clear and convincing evidence, the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." *In re Adoption of C.M.*, 255 A.3d 343, 363 (Pa. 2021) (cleaned up). Although the Adoption Act does not define parental duties, "our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support." *In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (cleaned up). Parental duties are achieved "through affirmative actions that develop and maintain the parent-child relationship." *Id*. Additionally, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *In re Adoption of C.M.*, 255 A.3d at 364 (cleaned up).

Even where the evidence clearly establishes that a parent has failed to perform affirmative parental duties for a period of six months, the court must "examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights." *Id*. Specifically, courts must evaluate "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to [§] 2511(b)." *In re Adoption of L.A.K.*, 265 A.3d at 593. The purpose of such an analysis gives effect to the mandate that courts avoid a mechanical application of the law, and instead promote the needs and welfare of each individual child. *Id*. Thus, we must consider "whether a parent has faced barriers that prevented the parent from maintaining the parent-child relationship" relative to the conditions of each case. *Id*. The primary focus of § 2511(a)(1) "is not the degree of success a parent may have had in reaching the child, but examines whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship." *In re Adoption of C.M.*, 255 A.3d at 365.

With these overarching legal principles in mind, we turn to Father's putative claims for relief. Firstly, he contends that the orphans' court erred in terminating his parental rights contrary to 51 Pa.C.S. § 4109, where the court

considered the time that he was employed by the Department of Defense overseas, which significantly overlapped the six-month period preceding Mother's filing of the petition.[4]  *See* Father's brief at 9-11.  While conceding that he does not meet the statute's definition of an "eligible servicemember," he avers that he "essentially" meets the definition, and thus should receive the protections of the law.  *Id*. at 10.

We observe that Father did not raise this issue at the hearing, nor did he include it in his Rule 1925(b) statement.  *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the

_____

[4] That statute provides, in relevant part:

> **(c) Exclusion of military service from determination of child's best interest.--**If a petition for the change of custody of the child of an eligible servicemember who was deployed in support of a contingency operation is filed after the end of the deployment, no court may consider the absence of the eligible servicemember by reason of that deployment in determining the best interest of the child.
>
> **(f) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
>     . . . .
>
> **"Eligible servicemember."**  A member of the Pennsylvania National Guard or a member of an active or reserve component of the Armed Forces of the United States who is serving on active duty, other than active duty for training, for a period of [thirty] or more consecutive days, in support of a contingency operation.

51 Pa.C.S. § 4109.

[s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Since Father did not present this argument to the orphans' court and is asserting it for the first time on appeal, this issue has been waived.

We thus proceed to Father's second assertion that the court did not have adequate grounds to terminate his parental rights. He explains that he primarily contacted R.G.A. through phone calls to Mother, but while overseas he "utilize[d] blocked or unknown numbers," which Mother would not answer. **See** Father's brief at 12 (cleaned up). Her phone was also not able to receive voicemails. **Id**. Even though Mother was aware of his limited communication ability while abroad and that he typically withheld his number from the recipient, Father claims that Mother still refused to answer unidentified calls that may have been from him. **Id**. Thus, he concludes that this "evidence shows an attempt and purpose to have an ongoing relationship with" R.G.A., and that Mother's efforts were "intentional" in "stymieing [his] efforts to have continuing contact." **Id**. at 12-13.

In determining that termination was appropriate, the orphans' court reasoned as follows:

> The [p]etition in this matter was filed on June 18, 2024, making the period from December 18, 2023, through June 18, 2024[,] the relevant time period. The [c]ourt has little trouble in finding that the evidence presented clearly and convincingly establishes that Father has failed to perform affirmative parental duties for a period in excess of six months as required by [§] 2511(a)(1). Indeed, Father has not even seen [R.G.A.] in person since August 27, 2023. He has contributed no child support aside from

occasionally funding some clothes and toys for the [c]hild through his own parents. Father has undertaken no parental duties in regard to [R.G.A.]'s schooling, medical appointments[,] or activities.

Orphans' Court Opinion, 10/8/24, at 13.

The court further determined that Father had not exhibited sufficient fortitude in responding to obstacles impeding his ability to provide parental care to R.G.A., explaining thusly:

> The court, of course, understands that when Father was overseas in [a] combat zone, there may [have been] severe restrictions on his ability to maintain communication. [Paternal grandfather] acknowledged having communication with Father when Father was overseas, albeit limited. But communication with RGA was even more limited . . . to a single occasion. The court cannot find that Father took any special effort to maintain communication. Even if he made phone calls to Mother, the only evidence of those are from September of either 2023 or 2024; there is no evidence of any such efforts, meager as they were, at any time in the [six] months prior to the filing of the petition.
>
> Likewise, the court does not doubt that Father sustained an injury overseas which cut short his employment. The court does not doubt that Father is still in treatment for those injuries. But those injuries are not to the extent that they should have stopped Father from making efforts to see or at least speak with his child. Indeed, those injuries have not precluded Father from pursuing higher education upon his return to this country; they are not debilitating.
>
> Consideration of the post-abandonment contact between Father and [R.G.A.] also demonstrates Father's lack of fortitude in keeping his relationship with [R.G.A.] intact. By his own admission, Father did not file a petition to enforce his custodial rights when he got back to this country. His explanations as to why that did not occur, blaming Mother, having no money, and finding no one at the custody office, are very poor excuses and are far from the efforts reasonably expected of a father.

- 11 -

Finally, the court finds that there will be no adverse effects upon the child in severing her relationship with Father. Mother testified that the child does not inquire about Father. Fatherly duties are being made by Mother's paramour at this point. Father points to photographs depicting him and [R.G.A.] together, but those photographs are [one to three] years old. . . . The court recognizes the testimony of [paternal grandfather] as his family's efforts to support and see [R.G.A.] But seeing the child [five] times since August of 2023 does not appear to the court to demonstrate that Father's extended family constitutes a pillar of the child's life. Moreover, their conduct is tangential to the fundamental issue in this case, which is about Father's efforts.

Orphans' Court Opinion, 10/8/24, at 14-15 (some capitalization altered).

The certified record supports the orphans' court's findings. Mother established that while Father purportedly called her utilizing unknown or restricted numbers, before his employment overseas, he contacted her with his known number to orchestrate custody exchanges. *See* N.T. Hearing, 10/4/24, at 6-7, 54. The record is devoid of evidence that Father called or texted Mother to communicate with R.G.A. on his known number in the six months immediately preceding the petition. In fact, Mother attested that Father has not reached out to her or seen R.G.A. in person since August 27, 2023. *Id*. at 5-6, 76. The record only demonstrates that Father attempted to call Mother using an unidentified number on three dates in September 2023 or 2024, and he saw R.G.A. once on a video call with his family in November 2023. *Id*. at 5-6, 40, 53-54, 76. Mother also attested that it was typical for Father not to take advantage of his full prearranged time with R.G.A. or pay child support. *Id*. at 8. Moreover, when Father returned from his overseas employment, he did not enforce their custody arrangement. *Id*. at 9;

- 12 -

Orphans' Court Opinion, 10/8/24, at 4-5. Mother confirmed that R.G.A. does not have a relationship with Father, she does not talk about him, and he has never taken R.G.A to school, daycare, activities, or medical appointments. *See* N.T. Hearing, 10/4/24, at 7, 9. Rather, Mother's paramour has been fulfilling that parental role. *Id*.

Although it is clear that Father faced obstacles in maintaining his relationship with R.G.A. due to his employment overseas and resulting injury, the orphans' court's determination that Father has not demonstrated sufficient fortitude to overcome those impediments is also supported by the record. Father contends that his lack of contact with R.G.A. stems from Mother purposefully not answering his calls. However, even assuming that Mother engaged in an inappropriate attempt to deny Father contact with R.G.A., the record is without any indication that Father has responded to these obstacles with the kind of "affirmative actions" that the law mandates. *See In re Adoption of L.A.K.*, 265 A.3d at 592. Three attempts to call Mother through unidentified numbers does not demonstrate that Father "utilized all available resources to preserve the parent-child relationship." *In re Adoption of C.M.*, 255 A.3d at 365. Father's parents saw R.G.A. five times between August 2023 and June 2024, but Father was not involved. *Id*. at 18, 25. Father also had a phone number that Mother was familiar with, but he had not used it to reach out to her for more than a year. *Id*. at 6. There is simply no other evidence of Father's efforts to overcome his obstacles.

Based on the foregoing, we do not discern an abuse of discretion or error of law in the orphans' court's findings pursuant to § 2511(a)(1). Accordingly, we affirm the order involuntarily terminating Father's parental rights.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/30/2025